IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**BOBBY T. DISMUKES**                                                              **PLAINTIFF**

**v.**                                                            **CIVIL NO. 1:23-cv-00273-BWR**

**SHATIKA LOCKHEART, et al.**                                                  **DEFENDANTS**

### ORDER DENYING DISPOSITIVE AND DISPOSITIVE FACTS MOTION [45] AND GRANTING MOTION [50] FOR SUMMARY JUDGMENT

*Pro se* Plaintiff Bobby T. Dismukes is a postconviction inmate housed in the custody of the Mississippi Department of Corrections ("MDOC") at the South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi. Compl. [1] at 2, 6. On October 16, 2023, Dismukes filed this lawsuit under 42 U.S.C. § 1983, *id.* at 3, and he is proceeding *in forma pauperis*, Order [10]. He names six Defendants: (1) Major Correctional Officer Shatika Lockheart, (2) Correctional Officer Keith McPherson, (3) Warden Floyd Spotts, (4) Superintendent Brand Huffman, (5) Major Correctional Officer Sheila Lawrence, and (6) Correctional Officer Kimberly Green. Compl. [1] at 3-4. Plaintiff's allegations were clarified at an Omnibus Hearing on March 7, 2024.[1]

On April 11, 2024, Plaintiff filed a Dispositive and Dispositive Facts Motion [45], which the Court construes as a request for summary judgment.[2] Defendants

---

[1] *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authorizing the magistrate judge to "hold an evidentiary hearing" to allow a *pro se* plaintiff to provide a more definite statement), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 (1989).

[2] Defendants did not respond to Plaintiff's request for summary judgment, but "a motion for summary judgment cannot be granted simply because there is no opposition."

filed a Motion [50] for Summary Judgment on August 19, 2024, and Plaintiff has since filed a Response [57], Supporting Memorandum [58], and a Supplemental Response [59]. The Court finds that Plaintiff's Dispositive and Dispositive Facts Motion [45] should be denied and that Defendants' Motion [50] for Summary Judgment should be granted. Plaintiff's claims against all Defendants should be dismissed with prejudice, and this case should be closed.

## I. BACKGROUND

### A. Plaintiff's Allegations

The events giving rise to this lawsuit occurred at SMCI. During the late morning on Saturday, March 19, 2022, Plaintiff alleges that another inmate, Shamal Jones, "entered [his] cell and assaulted [him]." Compl. [1] at 7. Plaintiff does not know "if other inmates saw anything," but he immediately "went to the tower officer and told them [he] had just been assaulted" and by whom. *Id.* Plaintiff also advised the tower officer that he thought his "hand and finger" were broken. *Id.*

McPherson was in the tower at the time; he refused to send Plaintiff to the infirmary or to "call other guards to the building to investigate what happened." Compl. [1] at 9. Instead, he told Plaintiff to "put in a sick call," Tr. [49] at 6-7, and Plaintiff believes that "proves" McPherson knew the injuries to his hand were serious, Mot. [45] at 2. Nor did McPherson "move . . . Shamal Jones or [Plaintiff]," leaving

---

*Nat'l Fire & Marine Ins. Co. v. Shirley*, No. 2:18-cv-00016-KS-MTP, 2018 WL 4212411, at *1 (S.D. Miss. Sept. 4, 2018) (quotation omitted). "A court may only grant an unopposed summary judgment motion if the undisputed facts show that the movant is entitled to judgment as a matter of law." *Keystone Real Est. Lending Funds, L.P. v. Fletcher*, No. 1:19-cv-00263-HSO-JCG, 2020 WL 4690059, at *3 (S.D. Miss. Jan. 27, 2020). Thus, the Court must consider both pending motions on the merits. *See id.*

Plaintiff "in a situation of possibly being assaulted" again. Compl. [1] at 9. Plaintiff does not allege any further altercations between himself and Jones, nor does he allege any altercations between himself and Jones before March 19.

Green and Lockheart learned of the assault shortly after, and both refused to "let . . . [Plaintiff] leave the building" to seek medical care. Compl. [1] at 10. Plaintiff asserts that Green and Lockheart engaged in "a direct ploy to cover up the assault, *id*. at 11, and that they "conspired together to deny [him] medical service," Tr. [49] at 20. Plaintiff next sought medical care from Lawrence and an unnamed nurse, who said they "would try to get [Plaintiff] to the infirmary," but "that was not done." Compl. [1] at 10.

Plaintiff finally received medical attention several[3] days later, when another official noticed that his "finger was abnormally swollen." Compl. [1] at 10-11. An x-ray "determined . . . that [his] finger had been broken." *Id*. at 8; *see also* Tr. [49] at 9. Between the date of the assault and the date of the x-ray, Plaintiff testified that he did not receive ice, ibuprofen, or any other measures to curb the pain. Tr. [49] at 10. After the x-ray, Plaintiff testified that his hand was wrapped with "cotton gauze" and "[p]opsicle sticks" by a nurse at the direction of the treating physician. *Id*. Plaintiff further testified that his hand was rewrapped about four times over the next three months. *Id*. at 10-12.

---

[3] Plaintiff's pleadings indicate that he was provided medical care between two and four days after the assault occurred. *E.g.*, Compl. [1] at 10 (two days); Resp. [28] at 7 (four days).

3

Prison officials made Plaintiff an appointment with Dr. Baker, a bone specialist in Hattiesburg. Compl. [1] at 8; Tr. [49] at 12. Plaintiff did not see Dr. Baker until three months "had passed from the date of [his] injuries," by which time his finger had healed improperly. Compl. [1] at 8. As a result, Plaintiff says that he lost normal usage of his hand, and he can no longer "do simple task[s]" like picking things up off the floor or making a "normal fist." *Id.* Since he saw Dr. Baker, Plaintiff attended physical therapy twelve to fourteen times, and he performs independent rehabilitative exercises. Tr. [49] at 13-14. These measures have helped some, *id.* at 14, but Plaintiff still suffers lingering effects—including "partial loss of movement and function" in his "primary hand." Mot. [45] at 5-6.

In addition to the above-named Defendants, Plaintiff has sued Huffman and Spotts because they are "responsible for the actions of their correctional officers." Compl. [1] at 11. He believes they have a "constitutional duty . . . to protect inmates from the violence of other inmates and they failed to do so." *Id.* Plaintiff seeks an award of actual and punitive damages in the amount of $52,500.00, *id.* at 9, plus "additional medical treatment on [his] hand," Tr. [49] at 27.

### B. Defendants' Summary Judgment Evidence

Attached to their Motion [50] for Summary Judgment, Defendants submitted the following evidence: (1) MDOC's Medical Services Policy, [50-1]; (2) Plaintiff's administrative grievances, [50-2]; (3) excerpts from Plaintiff's medical records, [56]; and (4) Plaintiff's institutional file, [50-4]. According to MDOC's Medical Services Policy, an "inmate requesting medical services should fill out a Medical Services

Request Form (previously called a 'Sick Call Request'), sign, date, and place the completed form in the designated area in the unit." Mot. [50-1] at 1. At that point, medical staff will "[t]riage . . . offender requests . . . within 24 hours" and schedule any necessary appointments "within seven . . . working days of the triage date." *Id*. at 4.

Plaintiff's medical records reveal that he was treated by Nurse Practitioner Madison Brewer on Wednesday, March 23, 2022—three working days after his injuries occurred. Exh. [56] at 1. She documented "swelling to [his] right hand," a "small scabbed over area [on the] top of [his] right hand," and "[r]educed [range of motion]" in the fourth finger on his right hand. *Id*. She ordered an x-ray of his right hand and planned to "await [the x-ray] results and treat accordingly." *Id*. Meanwhile, that same day, Dr. Charmaine McCleave provided Plaintiff with 600-milligram tablets of ibuprofen, and Nurse Melanie E. Byrd splinted his injured hand. *Id*. at 3. The next day, an x-ray revealed a "fracture" to Plaintiff's fourth right-hand finger, and Plaintiff's ibuprofen was continued. *Id*. at 4.

Also, Plaintiff's institutional file reveals that he "was seen at intake and asked if there was anyone [in the facility] he could not live with." Mot. [50-4] at 11. Plaintiff denied any conflicts with fellow inmates, "signed a red tag stating same," and "was told to let security or his case manager know if anything changed." *Id*.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). "In reviewing the evidence, the court must therefore refrain from making credibility determinations or weighing the evidence." *Id.* (quotation omitted).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and alterations omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with 'significant

probative' evidence." *Id.* (quoting *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978)).

## III. DISCUSSION

Defendants are entitled to judgment as a matter of law on Plaintiff's claims against them for three reasons. *First*, Plaintiff's official-capacity claims are barred by the doctrine of sovereign immunity. *Second*, Defendants Lockheart, McPherson, Lawrence, and Green are entitled to qualified immunity on Plaintiff's individual-capacity claims, as Plaintiff has failed to demonstrate a constitutional violation. *Third*, Plaintiff has failed to demonstrate the personal involvement of Defendants Huffman and Spotts. Plaintiff's claims against all Defendants must be dismissed with prejudice.

### A. Plaintiff's claims against Defendants in their official capacities are barred by Eleventh Amendment sovereign immunity.

Defendants argue that they "are entitled to sovereign immunity" from Plaintiff's claim for monetary damages in their official capacities. Mem. [51] at 4-6 (emphasis omitted). "The Eleventh Amendment bars citizens of a state from suing their own state or another state in federal court . . . unless the state has waived its sovereign immunity or Congress has explicitly abrogated it." *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013). Congress has not abrogated state sovereign immunity under § 1983. *Id.* Nor has the State of Mississippi waived its sovereign immunity for lawsuits filed in federal court. *See* MISS. CODE ANN.§ 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the

7

Constitution of the United States."). Thus, "[t]he Eleventh Amendment . . . 'generally precludes actions against state officers in their official capacities.'" *Salinas v. Tex. Workforce Comm'n*, 573 F. App'x 370, 372 (5th Cir. 2014) (quoting *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004)).

The Supreme Court recognized a narrow exception to Eleventh Amendment sovereign immunity in *Ex parte Young*, 209 U.S. 123 (1908). "This exception strips the individual state actor of immunity and allows a private citizen to sue that individual in federal court for prospective injunctive relief based on allegations that the actor violated federal law." *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quotation and brackets omitted). Without a "continuing violation of federal law," there would be "no occasion to issue an injunction." *Green v. Mansour*, 474 U.S. 64, 73 (1985).

Plaintiff has alleged a prior violation of federal law—not one that is ongoing or continuous. The *Ex parte Young* exception does not apply, and Defendants are entitled to judgment as a matter of law on Plaintiff's claims against them in their official capacities. *See, e.g.*, *Evans v. Hall*, No. 5:20-cv-00066-MTP, 2022 WL 20209929, at *3 (S.D. Miss. July 5, 2022) (dismissing official-capacity claims against defendants in failure-to-protect case); *Clark v. Banks*, No. 1:16-cv-00208-HSO-JCG,

2018 WL 1866619, at *4 (S.D. Miss. Jan. 2, 2018), *report and recommendation adopted by* 2018 WL 783075, at *3 (S.D. Miss. Feb. 8, 2018) (dismissing official-capacity claims against defendants in denial-of-medical-care case).

### B. Defendants Lockheart, McPherson, Lawrence, and Green are entitled to qualified immunity in their individual capacities because Plaintiff has failed to establish a constitutional violation.

Defendants also argue that they "are entitled to qualified immunity on all individual capacity claims against them." Mem. [51] at 9-14. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quotation omitted). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quotation omitted).

"[E]valuating qualified immunity is a two-step process." *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013). The first step is to "determine whether the plaintiff has alleged a violation of a clearly established constitutional or statutory right," and "the second step is to determine whether the defendant's conduct was objectively reasonable." *Id.* at 502-03. "[I]t is within the lower court's discretion to decide which prong of the qualified immunity analysis to address first." *Skinner v. Hinds Cnty.*,

*Miss.*, No. 3:10-cv-00358-DPJ-FKB, 2012 WL 3913092, at *3 (S.D. Miss. Sept. 7, 2012). Because Plaintiff has failed to establish a constitutional violation, the Court's qualified-immunity inquiry will begin and end there. *See Est. of Parker v. Miss. Dep't of Pub. Safety*, 728 F. Supp. 3d 372, 385 (S.D. Miss. 2024) ("If the alleged conduct did not violate a constitutional right, the inquiry ends because there is no constitutional violation for which the government official would need qualified immunity.").

### i. *Plaintiff has failed to demonstrate an Eighth Amendment violation based on the denial or delay of medical care.*

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Tex. Dep't of Crim. Justice*, 91 F. App'x 963, 964 (5th Cir. 2004). To prove deliberate indifference, Plaintiff must show that Defendants knew of and disregarded an excessive risk to his health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). That is, Defendants "must [have] both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also [have] draw[n] the inference." *Id.* "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

"Deliberate indifference cannot be inferred from negligent, or even grossly negligent, acts or omissions of a defendant; mere negligence, neglect, unsuccessful medical treatment or even medical malpractice do not give rise to a § 1983 cause of action." *Toomer v. Coulter*, No. 1:18-cv-00312-RHW, 2020 WL 1286215, at *3 (S.D.

10

Miss. Mar. 18, 2020). "A prisoner claiming deliberate indifference to serious medical needs must submit evidence that Defendant 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (quoting *Davidson*, 91 F. App'x at 965). "The determinative issue is not whether the medical treatment plaintiff received was subpar in some respect, whether his medical problems persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether his serious medical needs were met with deliberate indifference." *Id.* (quotation, alterations, and emphasis omitted).

"Deliberate indifference is especially hard to show when the inmate was provided with ongoing medical treatment." *Fails v. DeShields*, 349 F. App'x 973, 976 (5th Cir. 2009). That is, "the existence of continuous medical care often precludes a finding of deliberate indifference." *Collins v. Caskey*, No. 4:07-cv-00058-HTW-LRA, 2009 WL 2368578, at *3 (S.D. Miss. July 29, 2009). "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). "Mere delay in receiving care is not in and of itself a constitutional violation." *Jones v. Perry*, No. 2:11-cv-00044-MTP, 2012 WL 3267540, at *3 (S.D. Miss. Aug. 9, 2012) (quotation omitted). "Plaintiff's disagreement with the speed, quality, or extent of medical treatment . . . do[es] not give rise to a Section 1983 claim." *Id.* (quotation omitted).

Plaintiff has failed to show that Defendants knew of and disregarded a substantial risk of serious harm to his health. *See Farmer*, 511 U.S. at 837. Plaintiff argues that Defendants, who are correctional employees and not medical staff, erred by assessing his injuries and declining to provide emergency care. Resp. [57] at 4. He says, "these Defendants made a medical [judgment] which they were not trained to do." *Id*. But "prison officials are entitled to rely on qualified medical provider's opinions in determining what medical care is appropriate." *Dixon v. Rushing*, No. 3:07-cv-00379-JCS, 2009 WL 3163227, at *5 (S.D. Miss. Sept. 29, 2009). Thus, Plaintiff was instructed to submit a sick call request immediately after the injuries occurred, and he testified that no one interfered with his ability to do so. Tr. [49] at 6-7, 25. It cannot be said that Defendants "ignored [Plaintiff's] complaints." *See Toomer*, 2020 WL 1286215, at *3.

Moreover, Plaintiff's medical records demonstrate nothing to indicate an emergent need. Despite "swelling [of his] right hand," Plaintiff suffered "[n]o redness" and "[n]o obvious musculoskeletal deformities." Exh. [56] at 1. He insists that McPherson "saw how badly [his] hand and fingers" were injured, Resp. [57] at 2, but Plaintiff has provided no objective proof that Defendants knew or should have known that he needed immediate care. The nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quotation omitted).

12

On the evidence before the Court, Plaintiff has failed to demonstrate Defendants' "sufficiently culpable state of mind" to sustain an Eighth Amendment claim. *See Farmer*, 511 U.S. at 834 (quotation omitted); *see also Bryan v. Endell*, 141 F.3d 1290, 1921 (8th Cir. 1998) (affirming denial of Eighth Amendment claim based on delayed medical care for a broken hand, where the plaintiff failed to show the defendants' "actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness"); *Luna v. Pearson*, No. 5:08-cv-00266-DCB-MTP, 2009 WL 1658406, at *4 (S.D. Miss. June 11, 2009) (recommending dismissal of medical-care claims against prison official who was "not medically trained, and was not personally involved in providing [the plaintiff's] medical care or in making any decisions regarding what medical care [the plaintiff] was to receive"), *report and recommendation adopted by* 2009 WL 1938909, at *1 (S.D. Miss. July 6, 2009); *Poullard v. Blanco*, No. Civ.A. 05-1019-P, 2006 WL 1675218, at *5 (W.D. La. June 9, 2006) (dismissing medical-care claims against defendants who "acted consistent with their roles in the prison administration by addressing [the plaintiff's] grievance or referring him to an avenue by which he might obtain relief").

Yet Plaintiff's main complaint is the timing of his medical care. Because he was evaluated and treated by medical professionals several days after his injury occurred, Plaintiff complains that the delay in medical care violated his constitutional rights. Resp. [57] at 3. But Plaintiff has failed to make the requisite showing that any delay in the provision of medical care was proximately caused by Defendants' response to his hand injuries. And the summary-judgment evidence affirmatively

demonstrates that Defendants *were not* responsible for the days-long delay in Plaintiff's medical care. For example, it is undisputed that Defendants instructed Plaintiff to submit a sick call request, that no one interfered with his ability to do so, and that he in fact submitted a sick call request on the day of his injuries. Tr. [49] at 6-7, 24-25. It is also undisputed that "[m]edical staff," not correctional staff, "determine if the inmate will be seen immediately or can be scheduled for a regular sick call." Mot. [50-1] at 1. Any delay in Plaintiff's medical care is attributable to SMCI's medical staff—none of whom are named as Defendants.

Regardless, evidence before the Court demonstrates that Plaintiff was not treated with deliberate indifference by medical personnel at SMCI either. It is undisputed that Plaintiff lodged about twenty sick calls after sustaining his hand injuries. Tr. [49] at 24. It is also undisputed that multiple providers at SMCI assessed Plaintiff's condition, including Nurse Practitioner Madison Brewer, Nurse Jessica Clark, Dr. Charmaine McCleave, and Nurse Melanie E. Byrd. Exh. [56] at 1-4. These providers prescribed pain medication, immobilized the affected area, and ordered an x-ray—which revealed that Plaintiff's fourth right-hand finger was fractured. *Id.* Plaintiff was then scheduled to see a bone specialist at an outside facility. Compl. [1] at 8. During the three-month wait for his appointment with the bone specialist, Plaintiff's hand was "rewrap[ped]" by providers at SMCI about four times. Tr. [49] at 10-12. The record evidence thus shows an undisputed pattern of "continuous medical care" at SMCI. *See Collins*, 2009 WL 2368578, at *3.

Prisoners are not entitled to the best treatment "that money [can] buy." *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). "The Fifth Circuit has firmly and routinely held that unsuccessful medical treatment, as well as a prisoner's disagreement with a course of treatment, fail to establish deliberate indifference." *Waites v. Woodall*, No. 1:13-cv-00558-MTP, 2016 WL 224133, at *4 (S.D. Jan. 19, 2016). Plaintiff has failed to demonstrate an Eighth Amendment violation based on the delay or denial of medical care.

> ### ii. *Plaintiff has failed to demonstrate an Eighth Amendment violation based on Defendants' failure to protect him.*

"To establish a § 1983 failure to protect claim against a prison official, a plaintiff 'must show that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his [need] for protection.'" *Evans*, 2022 WL 20209929, at *3 (quoting *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995)). Again, deliberate indifference requires that the official be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Prison officials are not . . . expected to prevent all inmate-on-inmate violence, but [they] are charged with protecting incarcerated individuals from a known excessive risk to safety." *Loisel v. Epps*, No. 3:07-cv-00035-JCS, 2009 WL 1515079, at *4 (S.D. Miss. June 1, 2009). "Mere negligent failure to protect is not actionable under § 1983, nor is deliberate indifference established by an official's failure to alleviate a significant risk that the official should have perceived but did not." *Brown v. Bufkin*, No. 1:17-cv-00306-RHW, 2019 WL 3220002, at *4 (S.D. Miss. July 17, 2019).

In November 2021, Plaintiff "was asked if there was anyone [in the facility that] he could not live with," and he "stated no and signed a red tag stating same." Mot. [50-4] at 11. Plaintiff was instructed "to let security or his case manager know if anything changed." *Id.* But this record lacks evidence that Plaintiff ever reported any suspicion or threat of imminent attack from Jones (or anyone else) before their altercation occurred. In fact, Plaintiff asserts that Jones attacked him "without a warning." Resp. [57] at 2. "On these facts, the Court concludes that the attack was unexpected, and the staff had not been made aware of problems between Plaintiff and [Jones] that would have signaled a substantial risk of serious harm." *See McAlister v. Mgmt. & Training Corp.*, No. 5:22-cv-00090-DCB-LGI, 2024 WL 4751586, at *5 (S.D. Miss. Nov. 12, 2024). "The correctional staff's actions, as recounted by Plaintiff, do not demonstrate deliberate indifference on the[ir] part." *See id.*; *see also Morris v. Collins*, No. 4:07-cv-00125-JCS, 2009 WL 963673, at *1 (S.D. Miss. Apr. 8, 2009) (rejecting failure-to-protect claim where the "[p]laintiff . . . failed to come forward with any evidence that [the defendant] acted with deliberate indifference to a substantial risk of serious harm to [the plaintiff]").

Nor does it matter for constitutional purposes that McPherson failed to separate Plaintiff and Jones immediately after the altercation occurred. Compl. [1] at 9. Plaintiff complains that he was left "in a situation of possibly being assaulted" again, *id.*, but he has failed to allege and prove that a subsequent assault in fact occurred. "[T]he mere threat of violence does not by itself constitute a failure to protect." *Bass v. Blount*, No. 1:18-cv-00075-RHW, 2019 WL 4197599, *1 (S.D. Miss.

16

Sept. 4, 2019); *see also Rucker v. Hall*, 1:19-cv-00901-RHWR, 2022 WL 1207151, at *5 (S.D. Miss. Apr. 22, 2022) ("Plaintiff's allegation of generalized danger . . . fails to state a failure to protect claim."). "As [Plaintiff] was never injured again" by Jones, his failure-to-protect claim against Defendants should be dismissed. *See Haynes v. Bradley*, No. 5:18-cv-00038-CWR-MTP, 2020 WL 5032047, at *3 (S.D. Miss. July 17, 2020), *report and recommendation adopted by* 2020 WL 5026865, at *1 (S.D. Miss. Aug. 25, 2020).

### C. Plaintiff has failed to show that Huffman and Spotts were personally involved in the alleged constitutional violations.

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). "However, a supervisor may be held liable if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* at 304. A supervisory official may also be liable if he "implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Id.* (quotations omitted).

Plaintiff sued Huffman and Spotts because they are "responsible for the actions of their correctional officers." Compl. [1] at 11. At the Omnibus Hearing, Plaintiff specifically invoked "vicarious liability and respondeat superior" to justify his claims against Spotts, and he blamed Huffman for not "check[ing] into everything like he

[should] . . . have." Tr. [49] at 19.  But Plaintiff has "utterly failed to present evidence" that Huffman and Spotts participated in the provision (or delay) of medical care, nor has he shown that Huffman and Spotts had advanced knowledge that he would be assaulted by Jones.  *See Hall v. Bingham*, No. 3:08-cv-00489-FKB, 2012 WL 868796, at *2 (S.D. Miss. Mar. 13, 2012).  "Furthermore, [Plaintiff] has failed to present any evidence alleging that [Huffman and Spotts] implemented unconstitutional policies that resulted in [Plaintiff's] injuries."  *See id.*  Plaintiff's allegations against Huffman and Spotts should also fail.

## IV. CONCLUSION

The Court has considered all arguments presented.  Any argument not specifically addressed would not have changed the outcome.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Plaintiff Bobby T. Dismukes' Dispositive and Dispositive Facts Motion [45] is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Defendants' Motion [50] for Summary Judgment is **GRANTED**.  Plaintiff's claims against all Defendants are **DISMISSED WITH PREJUDICE**.  A separate final judgment will be entered under Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 18th day of March, 2025.

s/ *Bradley W. Rath*
BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE